**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF NORTH CAROLINA**
**CHARLOTTE DIVISION**

| | | |
|---|---|---|
| PSM IP Limited, a British Virgin Islands Corp. | ) | |
| Plaintiff, | ) | Civil Action No. 3:08-135 |
| v. | ) | |
| Peninsula Components, Inc. d/b/a/ Pencom | ) | |
| Defendant. | ) | |

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT'S MOTION FOR TRANSFER LOCATION OF TRIAL TO THE NORTHERN DISTRICT OF CALIFORNIA PURSUANT TO 28 U.S.C. § 1404(a)**

Defendant Peninsula Components, Inc. ("Pencom") respectfully submits this Memorandum of Points and Authorities in Support of its Motion to Transfer the above captioned action (the "Action") to the United States District Court – Northern District of California, San Francisco Division, pursuant to 28 U.S.C. § 1404(a).

**INTRODUCTION**

Defendant Pencom seeks transfer of this Action because the United States District Court – Northern District of California, San Francisco Division, provides a more convenient location for the witnesses, and presents no prejudice to the parties at this early stage of the Action. Transfer is permissible pursuant to 28 U.S.C. § 1404(a). Over time, the courts have developed factors they evaluate to decide whether transfer is warranted. *Jim Crockett Promotions, Inc. v. Action Media Group, Inc.*, 751 F.Supp. 93, 96 (W.D.N.C. 1990) (the "*Crockett* factors").

The *Crockett* factors favor Pencom's request to transfer this Action to California. Pencom is domiciled and headquartered within the Northern District of California, and all of Pencom's witnesses reside in the Northern District of California. Venue is proper in the Northern District of California because the court has personal and subject matter jurisdiction over Pencom. By contrast, the United States District Court – Western District of North Carolina has minimal interest in the Action. Plaintiff PSM IP ("PSM") has no presence in North Carolina. Pencom's nexus with North Carolina includes a three-person satellite office, which is not involved in the Action. ***Pencom has sold none of the accused parts in North Carolina.***

The following Argument, including an analysis of the *Crockett* factors, will show that Defendant's motion to transfer venue to northern California should be granted.

**PROCEDURAL HISTORY AND RELEVANT FACTS**

Plaintiff PSM brought this Action in the United States District Court – Western District of North Carolina on March 26, 2008. Settlement discussions ensued but were unsuccessful. Defendant Pencom is filing its Answer to the Complaint concurrently with this motion. Pursuant to Local Civil Rule 7.1(B), the parties met and conferred in a good faith effort to reach consensus regarding the best location for trial in light of the facts and circumstances of the parties, without success. (*See* Declaration of Andrew J. Weill ("Weill Decl."), para. 3, attached as Exhibit 1.)

Plaintiff filed its Complaint in the United States District Court – Western District of North Carolina because, "among other reasons, Defendant Pencom has an office in Charlotte, North Carolina." (*See* PSM Complaint para. 3.) In fact, Pencom's presence in

North Carolina is inconsequential compared to its presence in the Northern District of California. (*See* Declaration of William A. Gardiner ("Gardiner Decl."), para. 5, attached as Exhibit 2.) Pencom's Charlotte, North Carolina, office is a three-person satellite office, with no involvement in this Action. (*See* Gardiner Decl., para. 9.) ***Pencom has sold none of the accused parts in North Carolina***. (*See* Gardiner Decl., para. 5.)

By contrast, Pencom's corporate headquarters, and the location of Pencom's witnesses, executives, and books and records, are in San Carlos, California, which is within the Northern District of California. (*See* Gardiner Decl., para. 3, 5, 11.)

Plaintiff itself has no physical presence whatsoever in North Carolina or the United States. (*See* Gardiner Decl., para. 10.) Even Plaintiff's lead counsel for this Action are located outside North Carolina, i.e., in Chicago, Illinois. (*See* Weill Decl., para. 4.)

## ARGUMENT

This Court may, for the convenience of parties and witnesses and in the interest of justice, transfer a civil action to any other district or division where it might have been brought. 28 U.S.C. § 1404(a), *Simpson v. Snyder's of Hanover, Inc.*, 2006 WL 1642227, *2 (W.D.N.C. 2006). The transfer process is qualitative, not quantitative. *Datasouth Computer Corp. v. Three Dimensional Technologies, Inc.*, 719 F.Supp. 446, 450 (W.D.N.C. 1989). In attempting to balance the interest of justice and the convenience of parties and witnesses to determine whether transfer is appropriate, a court considers eleven factors. *Jim Crockett Promotions, Inc. v. Action Media Group, Inc.*, 751 F.Supp. 93, 95 (W.D.N.C. 1990).

### A. The *Crockett* Factors Are Both Qualitatively And Quantitatively Favorable To Pencom's Motion To Transfer To The Northern District Of California.

An analysis of the eleven factors set forth in *Jim Crockett Promotions, Inc. v. Action Media Group, Inc.,* and used by the courts to decide whether to transfer an action to a different forum conclusively shows Pencom's motion to transfer this Action to the Northern District of California should be granted.

(1) The plaintiff's initial choice of forum. A plaintiff's choice of a proper forum carries considerable weight; however, it must be balanced with other factors. *Jim Crockett Promotions, Inc. v. Action Media Group, Inc.*, 751 F.Supp. at 96. Moreover, if the plaintiff chooses a foreign forum, or the cause of action bears little or no relation to the selected forum, ***the plaintiff's choice is no longer entitled to substantial weight***. *See Kilgus v. Schering-Plough Corp.*, 2007 WL 2022007, slip op. at 3 (W.D.N.C. 2007) (granting a transfer of forum under § 1404(a) where the plaintiff's only connection with its chosen forum was the location of plaintiff's attorneys' offices); *Parham v. Weave Corp.*, 323 F.Supp.2d 670, 673 (M.D.N.C. 2004) (noting that the weight given plaintiff's choice of forum is proportionate to the relationship between forum and the specific cause of action).

In this case, Plaintiff's initial choice of forum was not made for substantial reasons and therefore does not warrant "considerable" weight. There is no relationship between the forum and Plaintiff's specified cause of action. As noted above, none of Plaintiff's accused parts are sold in North Carolina. Indeed, Plaintiff's selection appears to have been made simply to place Pencom at a tactical disadvantage by requiring Pencom to

defend itself at a significant distance from its California headquarters. Plaintiff's stated basis is that Pencom has an office (however small) and has sold products in North Carolina. (*See* PSM Complaint, para. 3.) In fact, less than one-percent (1%) of Pencom's 2007 United States sales of any parts were made by the North Carolina office.

On this reasoning, Plaintiff could have brought the Action in any one of seven United States District court jurisdictions, where Pencom happens to have facilities. (*See* Gardiner Decl., para. 4.) Neither does Plaintiff choose the Western District of North Carolina for Plaintiff's convenience. Plaintiff has no presence in North Carolina. Not even Plaintiff's lead trial counsel in this Action are located in the state. (*See* Weill Decl., para. 4.)

Accordingly, Plaintiff has no grounds to deserve presumptive favor regarding this first *Crockett* factor. On the facts, the factor weighs heavily against Plaintiff.

(2)  <u>Residence of the Parties</u>. None of the principals of the parties reside in North Carolina. While Defendant has no knowledge of the actual residence of Plaintiff's principals, Pencom's principals live within the Northern District of California. If Defendant resides outside the United States, the United States trial location is neutral to Defendant, since San Francisco is easily accessible via numerous airlines serving its international airport. This factor is favorable for Pencom.

(3)  <u>Ease of Access to Sources of Proof</u>. All of Pencom's witnesses and books and records are located in California; virtually all within the Northern District of California. One anticipated witness resides in southern California. Pencom knows of no related events or witnesses located in North Carolina. Because Plaintiff has no presence

in North Carolina, the Western District of North Carolina location has no bearing on Plaintiff's ease of access to sources of proof. Because Pencom's witnesses and evidence are within the Northern District of California, this factor is favorable for Pencom.

(4) The availability of compulsory process for attendance of witnesses and the costs of obtaining attendance of willing witnesses. To the extent Pencom wishes to subpoena witnesses, the individuals would be subject to the Northern District of California court's jurisdiction. Pencom may need to subpoena at least one individual, a contractor with intimate familiarity with Pencom's information databases. (*See* Gardiner Decl., para. 11(f).)

As for willing witnesses, the costs of their attendance at a Western District of North Carolina trial are significant. None of these individuals have any normal business reason to travel to the Western District of North Carolina and would not go unless it were required of them for this litigation. (*See* Gardiner Decl., para. 8.). Logistically, all Pencom witnesses would be required to travel from California to Charlotte, North Carolina. Witnesses would therefore be away from their homes and place of business for one travel day for outbound transit, in addition to however long they might be required to attend trial. On the other hand, Plaintiffs must travel regardless of the trial location. The personal and financial costs to willing witnesses are significantly reduced by conducting trial where the Pencom witnesses reside – all but one individual within the Northern District of California; the sole other expected witness in southern California. This factor favors Pencom.

(5) The possibility of a view. Pencom is unaware that the jury will require a site visit. If a visit is necessary, Pencom operates from and holds inventory at its San Carlos, California, offices. In addition, Pencom has a manufacturing location within the Northern District of California. In contrast, there is nothing for the jury to see in North Carolina. If there is a possibility that a site visit is necessary, this factor favors granting Pencom's motion to transfer trial to the Northern District of California.

(6) Enforceability of a judgment. Should Pencom be granted the relief it seeks in its Answer, e.g., a judgment in favor of Pencom for non-infringement, and an award of attorney's fees and costs, and Plaintiff refuses to comply, enforcement in the Northern District of California would be substantially more convenient and less costly than enforcement across the country in the Western District of North Carolina. This factor weighs in favor of Pencom's request to transfer trial to the Northern District of California.

(7) The advantages and obstacles to a fair trial. Pencom will endure unfairness and hardship if this Action is litigated across the country from its headquarters. The primary source of the unfairness is the value of this Action compared to the incremental cost of litigating 2,300 miles from Pencom's headquarters in northern California. Pencom fully expects to prevail in its defense against Plaintiff's claims. Even if it does not, the highest estimated damages, based on a reasonable royalty rate, are less than $10,000. (*See* Gardiner Decl., para. 13.) By any standard, the value of this case is low, making the use of the Western District of North Carolina forum unnecessarily and unfairly burdensome.

Additionally, as discussed above, travel for witnesses and Pencom executives will be time-consuming as well as costly. Porting all necessary documents and other records to the East Coast, and the difficulty of quickly obtaining documents or other evidence requested by PSM or the court are complicated by the transcontinental distance. In addition, the time consumed by the key executive and employee-witness travel will disrupt Pencom's business operations substantially more than if the trial were located within the Northern District of California.

Conversely, PSM must travel regardless of the Action's forum, since it has no presence in North Carolina, or even in the United States.

PSM created an unfair and burdensome situation guaranteeing significant personal and financial cost to Pencom when it chose the Western District of North Carolina as the forum for this Action. Transfer to the Northern District of California eliminates these punitive aspects of trial for Pencom. Thus, this factor favors granting Pencom's request to transfer the Action to the Northern District of California.

(8) Other practical problems that make a trial easy, expeditious, and inexpensive. As discussed above related to factors 2, 3, 4, and 7, Pencom bears the burden of bringing witnesses and accessing inventory and books and records across country. This burden is costly in terms of monetary expense as well as business and personal time for witnesses and the Pencom executives. Trial conducted by the Northern District of California court makes the most efficient sense for Pencom.

////

////

Plaintiff is not harmed because it incurs costs related to travel away from its principal place of business regardless of the United States location. Accordingly, this factor favors Pencom's request to transfer trial to the Northern District of California.

(9)    Court congestion. All United States District courts have congested calendars. This factor is neutral for the parties.

(10)    The interest of having localized controversies settled at home. Fundamentally, the only logical "localized" forum for this Action is the Northern District of California. Certainly, the Western District of North Carolina does not provide that center. Plaintiff has no interests in the state of North Carolina. Pencom sells parts throughout the United States, with only a minimal presence in North Carolina; i.e., less than one-percent of all United States sales and no sales of Plaintiff's accused parts.

Instead, "home" for this Action is where Pencom is domiciled and has its principle business and operations offices. All strategic decisions regarding product design, sales, and marketing are taken at Pencom's headquarters. Thus, trial in the Northern District of California would be trial at "home" for the controversy. This factor weighs in favor of Pencom's request to transfer trial to the Northern District or California.

(11)    The avoidance of unnecessary problems with conflict of law. This Action is an intellectual property matter governed by federal law. The trial location is irrelevant. This factor is neutral.

After consideration and analysis of the facts and circumstances, nine of the eleven *Crockett* factors favor transfer of this Action from North Carolina to the Northern District

of California. The remaining two factors are neutral. The balance tips overwhelmingly in support of Pencom's motion to transfer, which should be granted.

**B. The Parties Are Not Prejudiced By Transfer To The Northern District Of California At This Stage Of The Action.**

Justice will not be delayed by transferring this Action to the Northern District of California. The Action is in its earliest stages. Pencom is concurrently submitting an Answer to the Complaint with this motion. Nothing is calendared. Discovery has not begun. Moreover, neither will this Court have been unnecessarily inconvenienced, since it has not had the need to be fully engaged in the parties' differences. The Court, by its Magistrate Judge, has been asked only to order consent motions submitted by the parties to continue Pencom's time to respond.

This early stage of the Action is an ideal time to designate the location for trial as the Northern District Court of California, San Francisco Division, for the convenience of witnesses and efficiency of trial.

**CONCLUSION**

For the foregoing reasons, Defendant Pencom respectfully requests its motion to transfer this Action to the Northern District of California be granted.

This the 26th day of June, 2008.

Respectfully submitted,

s/ J. Mark Wilson
Gregory J. Murphy
Bar Number 16458
J. Mark Wilson
Bar Number 25763
Attorneys for Defendant
Moore & Van Allen PLLC
Suite 4700
100 North Tryon Street
Charlotte, NC 28202-4003
T 704 331 1177
F 704 339 5981
markwilson@mvalaw.com

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF NORTH CAROLINA**
**CHARLOTTE DIVISION**

| | |
|---|---|
| PSM IP Limited, a British Virgin Islands Corp.<br><br>Plaintiff,<br><br>v.<br><br>Peninsula Components, Inc. d/b/a/ Pencom<br><br>Defendant. | Civil Action No. 3:08-135 |

**DECLARATION OF ANDREW J. WEILL IN SUPPORT OF DEFENDANT'S MOTION TO TRANSFER LOCATION OF TRIAL TO THE NORTHERN DISTRICT OF CALIFORNIA PURSUANT TO 28 U.S.C. § 1404(a)**

I, Andrew J. Weill, declare as follows:

1. I am counsel of record for Defendant Peninsula Components, Inc., ("Pencom") in the above-captioned action (the "Action"). I make this declaration of my personal knowledge or upon information and belief and, if sworn as a witness, I could and would testify competently to the facts stated herein.

2. The purpose of this declaration is to set forth facts supporting Pencom's motion to transfer the location of the Action to a location more convenient for witnesses and the conduct of the case.

3. By correspondence dated June 19, 2008, and June 20, 2008, and telephone conference June 20, 2008, the parties met and conferred in a good faith effort to reach consensus regarding the location for trial. This effort was not successful.

4.     On information and belief, lead litigation counsel in this Action for Plaintiff PSM IP, Barnes & Thornburg LLP, are located in Chicago, Illinois. The parties met on May 14, 2008, in an attempt to settle the matter. The only counsel appearing for Plaintiff was Thomas Donovan of Barnes & Thornburg. No North Carolina counsel participated.

I declare under penalty of perjury that the foregoing is true and correct.

Dated: June 26, 2008

ANDREW J. WEILL

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF NORTH CAROLINA**
**CHARLOTTE DIVISION**

| | | |
|---|---|---|
| PSM IP Limited, a British Virgin Islands Corp.<br><br>Plaintiff,<br><br>v.<br><br>Peninsula Components, Inc. d/b/a/ Pencom<br><br>Defendant. | ) | Civil Action No. 3:08-135 |

**DECLARATION OF WILLIAM A. GARDINER IN SUPPORT OF DEFENDANT'S MOTION TO TRANSFER LOCATION OF TRIAL TO THE NORTHERN DISTRICT OF CALIFORNIA PURSUANT TO 28 U.S.C. § 1404(a)**

I, William A. Gardiner, declare as follows:

1. I am President and Chief Executive Officer of Peninsula Components, Inc. ("Pencom"). I make this declaration of my personal knowledge or upon information and belief. If sworn as a witness, I could and would testify competently to the facts stated herein.

2. The purpose of this declaration is to set forth facts supporting Pencom's motion to transfer location of the above-referenced action to a location more convenient for witnesses and the conduct of the case.

3. Pencom is incorporated in the State of California, and has its business and operations headquarters in San Carlos, California, located in close proximity to the United States District Court – Northern District of California, San Francisco Division.

4.     Pencom has United States satellite sales, service, and manufacturing locations in Arizona, California, Florida, New Hampshire, North Carolina, Texas, and Nevada, with multiple locations in some states. The majority of these United States locations are in the western half of the country.

5.     Pencom makes sales of its products throughout the United States. In 2007, less than one-percent (1%) of Pencom's total United States sales were generated by Pencom's North Carolina office. Pencom has sold none of PSM's parts in the state of North Carolina.

6.     All of the executives and other employees we currently anticipate will be involved in this action operate out of Pencom's San Carlos, California, headquarters.

7.     Pencom's records, books, and virtually all other documents related to this action are maintained in the San Carlos Pencom headquarters. The primary inventory of the parts in question is maintained at the San Carlos Pencom facility. The computer servers and databases are physically housed in San Carlos, as well as the information technology staff who maintain these resources.

8.     To the best of my knowledge, no witnesses or documents necessary to the conduct of this action are located within the Western District of North Carolina. Neither are any of our witnesses required to travel to North Carolina for business.

9.     The Pencom office located at 6012 Old Pineville Road, Unit E, Charlotte, North Carolina, is a small satellite office staffed by three full-time sales employees. No strategic business decisions are made at the North Carolina office. No Pencom executives

or other employees involved in this matter work at the North Carolina office. No documents or things related to the present action are housed in the North Carolina office.

10.    To the best of my information and belief, Plaintiff PSM IP does not have any presence in North Carolina, or anywhere in the United States.

11.    The following are names of several persons in the northern California area known to be key percipient witnesses to any of the matters raised in the pleading in this action, and the matters upon which they are expected to testify. This list is to the best of my ability and based on the issues raised in the pleadings by plaintiff PSM IP. Additional individuals may be identified as witnesses.

     a.  I would be a key witness in this litigation. I live near San Carlos, California, and operate out of our headquarters there. My knowledge of this action covers most aspects of the dispute, including development of our products, including some of those accused by plaintiff; financial matters; operations of Pencom; sales; and other executive-level aspects of the management of Pencom.

     b.  Steve Blank is Pencom's Sales Manager, who lives near our San Carlos, California, facility and operates out of our headquarters there. His involvement in the action would relate to the sales of certain products accused by plaintiff, as well as aspects of communications with third parties.

     c.  Nancy Wong is Pencom's Chief Financial Officer, who lives near our San Carlos, California, facility and operates out of our headquarters

there. She has knowledge of all financial operations of the company and would be a witness on aspects related to any damages issues in the case.

d. Mario Callejas is Pencom's Quality Assurance manager, who lives near our San Carlos, California facility, and operates out of our headquarters there. Mr. Callejas has knowledge about the inspection regime for Pencom products as well as other matters relating to quality assurance.

e. Paul Lanagan is in charge of Pencom marketing. He lives near our San Carlos, California, facility and operates out of our headquarters there. Mr. Lanagan would be involved in the litigation to the extent issues related to the marketing of any relevant products were involved. He would also be prepared to discuss certain aspects related to possible damages issues.

f. To the extent we wish to subpoena individuals who are not employees of Pencom, they would be subject to the Northern District of California court's authority. For example, Chris Buettner is our information technology expert and is a contractor for Pencom, not an employee. He lives near our San Carlos, California, facility and works out of our headquarters there when necessary. Mr. Buettner would have knowledge of all of our databases of information and would be integrally involved in the process of this litigation.

12. The litigation of this matter in the Western District of North Carolina would certainly affect me personally. More importantly, other Pencom witnesses I have listed

above would suffer bigger disruptions to participate in litigation in North Carolina. One of my contract employees listed above, Mr. Buettner, is a new father. All of these individuals have no normal business reason to travel to the Western District of North Carolina and would not go unless it was required of them in this litigation. I am afraid the impact on their families could be immense.

13.    I am in the beginning process of investigating the claims plaintiff PSM IP have made against Pencom. PSM IP's complaint alleges that Pencom infringed its intellectual property and listed one accused product. Without admitting any liability and for purposes of my analysis only, I have expanded that list to eighteen products that could be considered related to PSM IP's patent. The sales figures of those eighteen products, going back six years, totals approximately $192,000. Of that figure, approximately $141,000 are domestic sales. Assuming this figure is the correct basis for calculations of any damages and assuming other defenses are not successful, a reasonable royalty on these sales will total less than $10,000. I have also learned that PSM IP has a critical problem recovering any damages prior to the date of the complaint because neither the product nor its packaging was properly marked, contrary to the allegation in paragraph six of PSM IP's Complaint. That would limit damages to the period after March 26, 2008. In that case, sales figures would be reduced to virtually nothing. Under any analysis, the value of this case is extremely low, further making the use of the North Carolina forum additionally burdensome.

////

////

I declare under penalty of perjury that the foregoing is true and correct.

Dated: June 25, 2008

WILLIAM A. GARDINER

Kilgus v. Schering-Plough Corp.
W.D.N.C.,2007.
Only the Westlaw citation is currently available.
United States District Court, W.D. North Carolina, Charlotte Division.
Douglas J. KILGUS, Plaintiff,
v.
SCHERING-PLOUGH CORPORATION, Defendants.
**No. 3:07CV00188-C.**

July 9, 2007.

Julie Hanna Fosbinder, Charlotte, NC, for Plaintiff.
J. Donald Cowan, Jr., Smith Moore LLP, Greensboro, NC, for Defendants.

***MEMORANDUM AND ORDER***

CARL HORN, III, United States Magistrate Judge.
***1 THIS MATTER** is before the Court on the Defendant's "Motion for Change of Venue to the United States District Court for the Middle District of North Carolina" (document # 5) and "Memorandum of Law Supporting ..." (document # 6), both filed May 4, 2007. After being prompted by a call from chambers reminding counsel that her response was overdue, the Plaintiff filed its "Memorandum of Law in Opposition ..." (document # 11) June 20, 2007. On June 27, 2007, the Defendant filed its "Reply Memorandum ..." (document # 14).

The instant motion has been referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B), and is now ripe for disposition.

Having considered the parties' arguments, the record, and the applicable authority, the undersigned will *grant* the Defendant's Motion, as discussed below.

**I. *FACTUAL AND PROCEDURAL BACKGROUND***

This is an action seeking damages for alleged negligence, failure to warn, gross negligence, and breach of an implied warranty of fitness. The Plaintiff, Douglas J. Kilgus, a citizen and resident of Forsyth County, North Carolina and formerly practicing orthopedic surgeon at Wake Forest University Baptist Medical Center in Winston-Salem, North Carolina, was diagnosed with Hepatitis C. As prescribed by his New York physician, Dr. Hillel Tobias, the Plaintiff's Hepatitis C was treated with injections of Interferon alpha 2b ("Inferon") for approximately two years.

The Defendant is an international pharmaceutical corporation with its world headquarters located in Kenilworth, New Jersey. The Defendant develops, manufactures, and markets Interferon, a prescription drug that has been used to treat Hepatitis C. Interferon is considered by the FDA to be a "black box" drug because of the many serious side effects known to accompany it. Allegedly unknown to the Plaintiff, one of the unreported side effects is short term memory loss.

In early 2005, the Chairman of the Department of Orthopedics at Wake Forest University Medical Center ("Chairman") learned that the Plaintiff was suffering short term memory loss. As a result, the Plaintiff was asked to take medical leave, to stop operating, and to seek medical treatment. The Plaintiff followed these directives, seeking treatment from neuropsychology specialist Dr. Claudia H. Kawas, Professor of Neurology and Neurobiology and Behavior at the University of California, and Dr. Cecile E. Naylor, Neuropsychologist at Wake Forest University School of Medicine. The Plaintiff's test scores remained weak and his memory as of September 2006 was "vulnerable to depression with significant weaknesses that are known to take a toll on cognitive skills."On December 19, 2006, the Chairman informed the Plaintiff that he would be unable to return to his surgical po-

sition, and thereafter he was deemed to be qualified for disability income.

On March 15, 2007, the Plaintiff filed an action in the Superior Court of Mecklenburg County. The Defendant removed the action to this Court on March 14, 2007. Removal has not been challenged and appears to be proper.

***2** On May 4, 2007, the day after the Notice of Removal was filed, the Defendant filed both a "Motion for Change of Venue to the United States District Court for the Middle District of North Carolina" (document # 5) and a "Memorandum of Law Supporting ..." (document # 6). The Plaintiff filed an untimely "Memorandum of Law in Opposition ..." (document # 11) June 20, 2007.[FN1] On June 27, 2007, the Defendant filed its "Reply Memorandum ..." (document # 14). The subject Motion is now ripe for determination.

> FN1. The Court notes and shares the Defendant's concern over the untimeliness of the Plaintiff's Response. Nevertheless, given the preference for deciding issues on the merits, the Court has considered the substantive arguments made in the Plaintiff's untimely Memorandum of Law in Opposition.

### II. *CONCLUSIONS OF LAW*

The Defendant moves for a change of venue to the Middle District of North Carolina, noting that all relevant events that occurred in North Carolina occurred in that district. Conversely, the Defendant notes that the only connection with the Western District is the fact that Plaintiff's counsel resides and practices here.

Pursuant to 28 U.S.C. § 1404(a), "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought."The Supreme Court has noted that this provision is:

intended to place discretion in the district court to adjudicate motions for transfer according to an individualized, case-by-case consideration of convenience and fairness. A motion to transfer under § 1404(a) thus calls on the district court to weigh in the balance a number of case-specific factors.

*Stewart Organization, Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988) (quotations and citations omitted).

The factors to be considered in deciding a transfer motion include:

1. The plaintiff's initial choice of forum;

2. The residence of the parties;

3. The relative ease of access of proof;

4. The availability of compulsory process for attendance of witnesses and the costs of obtaining attendance of willing witnesses;

5. The possibility of a view;

6. The enforceability of a judgment, if obtained;

7. The relative advantages and obstacles to a fair trial;

8. Other practical problems that make a trial easy, expeditious, and inexpensive;

9. The administrative difficulties of court congestion;

10. The interest in having localized controversies settled at home and the appropriateness in having the trial of a diversity case in a forum that is at home with the state law that must govern the action; and

11. The avoidance of unnecessary problems with conflict of laws.

*D.P. Riggins & Associates, Inc. v. American Board Companies, Inc .*, 796 F.Supp. 205, 211-12 (W.D.N.C.1992), *citing Uniprop Mfrd. Housing*

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

*Communities Income Fund v. Home Owners Funding Corp. of America,* 753 F.Supp. 1315, 1322 (W.D.N.C.1990).

In the case at bar, the Plaintiff's choice of forum was Mecklenburg County, North Carolina (and therefore, once removed to federal court, the U.S. District Court for the Western District of North Carolina). The Plaintiff argues that it will be more convenient and less expensive (for him) if his Charlotte counsel can litigate and try this case in Charlotte. He also argues that it would be more convenient for out-of-town witnesses, including the doctors from California and New York, and any of the Defendant's employees from New Jersey or abroad, to fly into Charlotte's International Airport than to fly into the regional airport servicing Winston-Salem.

***3** The plaintiff's choice of forum is ordinarily entitled to "great weight," and should not lightly be disturbed. *Id.* at 212, citing *Uniprop,* 753 F.Supp. at 1322; and *Western Steer-Mom N'Pop's, Inc. v. FMT Investments, Inc.,* 578 F.Supp. 260, 265 (W.D .N.C.1984). However, the "plaintiff's choice of forum is not entitled to substantial weight if the plaintiff chooses a foreign forum, or the cause of action bears little or no relation to that forum."*U.S. Ship Management, Inc. v. Maersk Line, Ltd.,* 357 F.Supp.2d 924, 936 (E.D.Va.2005). On this key point, *see also Production Group Int'l, Inc. v. Goldman,* 337 F.Supp.2d 788, 799 (E.D.Va.2004) (plaintiff's choice of home forum entitled to greater weight than selection of foreign forum); and *Parham v. Weave Corp.,* 323 F.Supp.2d 670, 673 (M.D.N.C.2004) (weight given plaintiff's choice of forum is proportionate to the relationship between forum and the specific cause of action).

The Court finds Defendant's argument for a change of venue persuasive. Whatever weight is ascribed to the Plaintiff's choice of a foreign forum, it is clear that the only connection between this litigation and the Western District of North Carolina is the Plaintiff's lawyer (with whom the undersigned is well acquainted and for whom the undersigned has much respect). As the Defendant correctly notes, *all* other North Carolina connections with this litigation are in the Middle District. These include the Plaintiff's residence; the Plaintiff's former place of employment (Baptist Medical Center in Winston Salem); relevant employment records; the place where the Plaintiff injected the accused drug and allegedly suffered short term memory loss as a result; the Chairman of the Baptist Medical Center's Department of Orthopedics who placed the Plaintiff on medical leave, required that he cease performing surgery, and ultimately determined that the Plaintiff's injuries precluded his further employment by the hospital; and one of the Plaintiff's treating physicians (Cecile E. Naylor, M.D.).

Considering the fact that *all* North Carolina evidence and witnesses are in the Middle District, in addition to diminishing the weight given the Plaintiff's choice of forum, this fact causes other factors to weigh in favor of a change of venue. These factors include the residence of one of the parties (the Plaintiff), the relative ease of access of proof, the costs of obtaining attendance of willing witnesses, and the interest in having localized controversies settled at home. All remaining factors are neutral, that is, they favor neither the Middle nor the Western District of North Carolina.

In short, applying the above noted factors governing venue to this particular case virtually compels one conclusion: this action should have been brought, and should hereafter be litigated, in the Middle District of North Carolina. *Accord American Motorist Insur. Co v. CTS Corp.,* 356 F. Supp 2d 583, 584-89 (W.D.N.C.2005) (transferring action filed in plaintiff's *home* forum to Indiana where the parties' corporate headquarters and a majority of the witnesses were in Indiana and Illinois and relevant factors otherwise outweighed the plaintiff's choice of forum). That being the case, the Defendant's Motion for Change of Venue will be *granted.*

**III. *ORDER***

***4** NOW THEREFORE, IT IS HEREBY

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy Page 4
Slip Copy, 2007 WL 2022007 (W.D.N.C.)
**(Cite as: 2007 WL 2022007 (W.D.N.C.))**

ORDERED:

1. The Defendant's “Motion for Change of Venue to the United States District Court for the Middle District of North Carolina” (document # 5) is **GRANTED;** and this action is **TRANSFERRED** to the Middle District of North Carolina.

2. The Clerk is hereby directed to send copies of this Memorandum and Order to counsel for the parties; *and to the Honorable Robert J. Conrad Jr.*

**SO ORDERED.**

W.D.N.C.,2007.
Kilgus v. Schering-Plough Corp.
Slip Copy, 2007 WL 2022007 (W.D.N.C.)

END OF DOCUMENT

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Westlaw.

Not Reported in F.Supp.2d Page 1
Not Reported in F.Supp.2d, 2006 WL 1642227 (W.D.N.C.)
**(Cite as: Not Reported in F.Supp.2d, 2006 WL 1642227 (W.D.N.C.))**

C
Simpson v. Snyder's of Hanover, Inc.
W.D.N.C.,2006.
Only the Westlaw citation is currently available.
United States District Court,W.D. North Carolina.
Larry SIMPSON, Plaintiff,
v.
SNYDER'S OF HANOVER, INC., Defendant.
**Civil No. 1:05CV354.**

June 12, 2006.

Larry B. Leake, Leake & Scott, Asheville, NC, for Plaintiff.
Andrew S. Chamberlin, Ellis & Winters, LLP, Greensboro, NC, Danielle Renee Fahr, Joel L. Lennen, Eckert Seamans Cherin & Mellott, LLC, Pittsburgh, PA, John A. Chilson, Comerford Britt, LLP, Winston-Salem, NC, Richard W. Ellis, Ellis & Winters, LLP, Raleigh, NC, for Defendant.

*MEMORANDUMAND ORDER*

LACY THORNBURG, District Judge.
***1 THIS MATTER** is before the Court on the parties' timely filed objections to the Magistrate Judge's Memorandum and Recommendation that Defendant's motion to dismiss for improper venue be denied and its alternative motion to transfer venue be granted. Finding neither party's objections meritorious, the Court adopts the Memorandum and Recommendation.

## I. STATEMENT OF FACTS[FN1]

FN1. When considering Defendant's motion to dismiss for improper venue, all facts will be taken in a light most favorable to Plaintiff, as the non-moving party. ***See, e.g., Godfredson v. JBC Legal Group, P.C.,* 387 F.Supp.2d 543, 547 (E.D.N.C.2005) (citing *Three M Enters., Inc. v. Texas D.A.R. Enters., Inc.,* 368 F.Supp.2d 450, 454 (D.Md.2005).**

Plaintiff Larry Simpson is a citizen and resident of North Carolina. Defendant Snyder's of Hanover, Inc., is a snack food manufacturer incorporated under the laws of Pennsylvania and having its principle place of business in Pennsylvania. The relationship between Plaintiff and Defendant began in 1996 when Plaintiff began distributing Defendant's products within a designated area in western North Carolina. **Complaint, ¶ 3.** Plaintiff was successful in his distribution efforts, growing the business in his designated area "to such an extent and at such a rapid rate, that the Plaintiff and the Defendant agreed that it would be in the best interest of the parties for the [Plaintiff] to transfer the distributorship rights for the Asheville market to the Defendant in return for the Defendant giving him the ownership of one route in the Asheville market."***Id.,* ¶¶ 4-5.**The contract representing such agreement was executed by the parties on or about February 5, 1999. ***Id.,* ¶ 7;*see also,* Exhibit 1, Articles of Agreement, *attached to,* Defendant's Motion to Dismiss or, in the alternative, to Transfer Venue, filed January 26, 2006; Exhibit 2, Distributor's Agreement, *attached to,* Defendant's Motion.**The Distributor's Agreement signed by the parties contains a forum-selection clause, requiring Plaintiff to "file any suit against Snyder's only in the federal or state court having jurisdiction where Snyder's principal office is then located."**Distributor's Agreement, Art. 25(c).**

The parties existed harmoniously under this contract until approximately March 2005. At that time, Plaintiff alleges Defendant "attempted to force the [him] to agree to a transfer of his contract to a new alleged corporate entity; to wit, 'SOH Distribution Company, Inc.', which, based upon information and belief, is totally controlled and/or solely owned by the Defendant [.]"**Complaint, ¶ 8.** Plaintiff asserts that rather than Defendant simply assigning the February 1999 contract to SOH, Defendant "attempted to force the Plaintiff to sign a totally

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d Page 2
Not Reported in F.Supp.2d, 2006 WL 1642227 (W.D.N.C.)
**(Cite as: Not Reported in F.Supp.2d, 2006 WL 1642227 (W.D.N.C.))**

different contract, containing different rights and obligations."***Id.*** Plaintiff further alleges that when he refused to sign the contract Defendant embarked upon a course of conduct "aimed at trying to force the [Plaintiff] out of business, so that the Defendant might reacquire the Plaintiff's territory without compensating him for same."***Id.*, ¶ 16, and ¶¶ 9-15.**Defendant eventually terminated its contract with Plaintiff. ***Id.*, ¶ 9.**

In October 2005, Plaintiff filed suit against the Defendant in the General Court of Justice, Superior Court Division, for Henderson County, North Carolina, asserting claims for breach of contract and unfair trade practices. ***See, id.***Defendant thereafter removed the case to this Court on the basis of diversity of citizenship. ***See*, Defendant's Notice of Removal, filed December 7, 2005.**Following removal, Defendant filed this motion to dismiss the complaint pursuant to Federal Rule of Civil Procedure 12(b)(3) for improper venue or, in the alternative, to transfer this action to the United States District Court for the Middle District of Pennsylvania. ***See*, Defendant's Motion, *supra.***The Defendant's motion was referred to the Magistrate Judge pursuant to 28 U.S.C. § 636 for recommendation as to disposition. After consideration of the Plaintiff's response and Defendant's reply thereto, the Magistrate Judge recommended the Defendant's motion to dismiss be denied and granted the motion to transfer. ***See*, Memorandum and Recommendation, filed March 30, 2006, at 15.**Both parties have timely filed their respective objections to the Memorandum and Recommendation and Defendant has filed a reply to Plaintiff's objections. ***See*, Defendant's Objections to a Portion of Magistrate Judge's Memorandum and Recommendation, filed April 13, 2006; Plaintiff's Objections to the Findings of Fact, Conclusions of Law, and Recommendations of the Memorandum and Recommendation, filed April 23, 2006; Defendant's Reply to Objections, filed April 24, 2006.**

## II. LEGAL STANDARD

***2** A party may file written objections to a magistrate judge's memorandum and recommendation within ten days after being served with a copy thereof. **28 U.S.C. § 636(b)(1).**"Any written objections must *specifically identify* the portions of the Report and Recommendation to which objections are made *and* the basis for such objections."***Thomas v. Westinghouse Savannah River Co.*, 21 F.Supp.2d 551, 560 (D.S.C.1997),** ***aff'd in part, dismissed in part,*162 F.3d 1155 (table), 1998 WL 558730 (4th Cir.1998) (emphasis in original)*; see also, Battle v. United States Parole Comm'n,* 834 F.2d 419, 421 (5th Cir.1987) (" 'Parties filing objections must specifically identify those findings objected to.' " (quoting *Nettles v. Wainwright,* 677 F.2d 404, 410 n. 8 (5th Cir.1982)).** "Frivolous, conclusive or general objections need not be considered by the district court." ***Id.*** If proper objections are made, a district court will review the objections under a *de novo* standard. **28 U.S.C. § 636(b)(1).** Where no objection is made, however, the court need " 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.' " ***Diamond v. Colonial Life & Accident Ins. Co.*, 416 F.3d 310, 315 (4th Cir.2005) (quoting Fed.R.Civ.P. 72, Advisory Committee note).**

## III. ANALYSIS

### A. Motion to Transfer Venue

"Decisions whether to transfer a case pursuant to 28 U.S.C. § 1404 are committed to the discretion of the transferring judge[.]"***Brock v. Entre Computer Centers, Inc.*, 933 F.2d 1253, 1257 (4th Cir.1991) (citations omitted).** The Court "may[, for the convenience of parties and witnesses, in the interest of justice,] transfer a civil action to any other district or division where it might have been brought."**28 U.S.C. § 1404(a).** The burden lies with the moving party to establish that transfer is warranted. ***See, Jim Crockett Promotions, Inc. v. Action Media Group, Inc.*, 751 F.Supp. 93, 95 (W.D.N.C.1990).**

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d Page 3
Not Reported in F.Supp.2d, 2006 WL 1642227 (W.D.N.C.)
**(Cite as: Not Reported in F.Supp.2d, 2006 WL 1642227 (W.D.N.C.))**

In attempting to balance the interest of justice and the convenience of parties and witnesses to determine whether transfer is appropriate, the Court considers eleven factors:

1. The plaintiff's initial choice of forum;

2. The residence of the parties;

3. The relative ease of access of proof;

4. The availability of compulsory process for attendance of witnesses and the costs of obtaining attendance of willing witnesses;

5. The possibility of a view;

6. The enforceability of a judgment, if obtained;

7. The relative advantages and obstacles to a fair trial;

8. Other practical problems that make a trial easy, expeditious, and inexpensive;

9. The administrative difficulties of court congestion;

10. The interest in having localized controversies settled at home and the appropriateness of having the trial of a diversity case in a forum that is at home with the state law that must govern the action; and

***3** 11. The avoidance of unnecessary problems with conflict of laws.

***Id.*, at 96.** The Court must consider both the quantity and quality of factors weighing in favor of either retention or transfer on each side. ***See, id.***

In addition, where a valid forum-selection clause exists, such clause is a "significant factor that figures centrally in the district court's calculus." ***Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988)**; ***Brock*, 933 F.2d at 1258 (quoting *Stewart Org., Inc.*).** A party attempting to foreclose consideration of the forum-selection clause on the basis of its invalidity bears a " 'heavy burden of proof,' " and must " 'clearly show that enforcement would be unreasonable and unjust.' " ***Nizam's Inst. of Med. Sci. v. Exchange Tech., Inc.*, 28 F.3d 1210 (table), 1994 WL 319187, *3 (4th Cir.1994) (quoting *The Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 15-17 (1972)).**

The Magistrate Judge, after careful consideration of the relevant factors, recommended granting Defendant's alternative motion to transfer venue to the United States District Court for the Middle District of Pennsylvania. ***See*, Memorandum and Recommendation, at 8-15.** Plaintiff presents twelve objections to such recommendation.FN2 ***See*, Plaintiff's Objections.**

FN2. Plaintiff does not object to the Magistrate Judge's findings that factor 3 (relative ease of access of proof) weighed in favor of retention, that factor 5 (possibility of a view) was neutral, that factor 6 (enforceability of a judgment) was neutral, or that factor 9 (administrative difficulties of court congestion) was neutral. ***See*, Memorandum and Recommendation, at 12-14; Plaintiff's Objections.** Without objection from either party, and finding no clear error, the Court will adopt the Magistrate Judge's recommendation as to these four particular factors. ***See*, *Diamond*, 416 F.3d at 315 (where no objection is made, the Court may accept the Magistrate Judge's recommendation so long as there is no clear error on the face of the record).**

Plaintiff's first three objections are premised on his contention that the contractual forum-selection clause is invalid and that the Magistrate Judge erred in finding the clause valid and in considering such clause when making his recommendation. ***Id.*, at 1-3.** Plaintiff further contends that the clause "is invalid due to the Defendant's overreaching in procuring the Plaintiff's signature on the contract, the grave inconvenience of the selected forum, and the

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d Page 4
Not Reported in F.Supp.2d, 2006 WL 1642227 (W.D.N.C.)
**(Cite as: Not Reported in F.Supp.2d, 2006 WL 1642227 (W.D.N.C.))**

clause's contravention of North Carolina's strong public policy.”***Id.*, at 1.**

A forum-selection clause will be found unreasonable, and thus of no effect, where

(1) [its] formation was induced by fraud or overreaching; (2) the complaining party “will for all practical purposes be deprived of his day in court” because of the grave inconvenience or unfairness of the selected forum; (3) the fundamental unfairness of the chosen law may deprive the plaintiff of a remedy; or (4)[its] enforcement would contravene a strong public policy of the forum state.

***Allen v. Lloyd's of London,* 94 F.3d 923, 928 (4th Cir.1996) (citing *Carnival Cruise Lines, Inc. v. Shute,* 499 U.S. 585, 595 (1991)); *see also, Vulcan Chem. Techs., Inc. v. Barker,* 297 F.3d 332, 339 (4th Cir.2002) ( “[A]bsent a showing that the chosen forum is unreasonable or was imposed by fraud or unequal bargaining power, the parties' choice should be enforced.”).**

The Court finds Plaintiff's arguments regarding “overreaching” and “grave inconvenience” to be without merit. Plaintiff has done little more than “kick up dust” in raising these issues,[FN3] which is far short of his burden to make a strong showing that the forum-selection clause is unreasonable. The totality of the record currently before the Court does not establish that either of these circumstances exists.

FN3. For example, Plaintiff raises the issue of witnesses located in North Carolina being beyond the subpoena power of the Pennsylvania court. Yet, he has done nothing to establish that there are *actually* witnesses in North Carolina who are necessary to his case, who would refuse to travel to Pennsylvania for trial, *and* who would be beyond the subpoena power of the Pennsylvania court. Hypothetical situations are insufficient to satisfy Plaintiff's burden of establishing the unreasonableness of the forum-selection clause.

***4** Similarly unavailing is Plaintiff's assertion that because “the North Carolina General Assembly enacted a statute expressly disapproving of forum selection clauses[,]” enforcement of the forum-selection clause in this case would contravene such policy and thus be “unreasonable.” **Plaintiff's Brief in Opposition to Defendant's Motion, filed February 27, 2006, at 11; N.C. Gen.Stat. § 22B-3.**While the Court takes note of North Carolina's general distaste for such clauses, it is the public policy of Pennsylvania rather than that of North Carolina that must be considered. The parties' agreement states that it was entered into in Pennsylvania and contains a choice-of-law provision providing that “[t]he validity, interpretation and performance of this Agreement shall be controlled by and construed in accordance with the laws of the Commonwealth of Pennsylvania.”**Distributor's Agreement, at 1 (“Agreement made ... in Hanover, Pennsylvania, between SNYDER'S OF HANOVER, INC.... And Larry E. Simpson[.]”) and at Art. 25(j) (choice-of-law clause); *Bassett Seamless Guttering v. Gutterguard,* 2006 WL 156874, at *6 (M.D.N.C., Jan. 20, 2006) (“The contract at issue here, however, states that it was entered into in Colorado, making [N.C. Gen.Stat. § 22B-3] inapplicable.”); *Brock,* 933 F.2d at 1258-59 (finding the law of Virginia applicable, rather than that of Texas, where a choice-of-law provision designated Virginia law as proper *even though* the documents were executed in Texas).** Pennsylvania has no public policy against forum-selection clauses. ***See, e.g., IDT Corp. v. Clariti Carrier Servs.,* 2001 PA Super 114, ----, 772 A.2d 1019, 1022 n. 1 (Pa.Super.Ct.2001) ( “[T]he courts of this Commonwealth should decline to proceed with a claim where the parties have freely agreed that litigation is to be conducted in another forum, where such agreement is not unreasonable at the time of the time of litigation.”(citations omitted)).**

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

The parties to this case are both experienced in business, and they entered into an agreement sought by both parties. **Complaint, ¶ 5.** Part of that agreement was a forum-selection clause-appearing within the agreement in all capital letters-clearly explaining the appropriate forum in which to bring claims arising out of the agreement. The clause is *prima facie* valid, the designated forum has a substantial connection to the case, and Plaintiff has not carried his burden of establishing the unreasonableness of the clause. The Court, therefore, finds the forum-selection clause valid and a significant factor in determining whether this matter should be transferred to the Middle District of Pennsylvania pursuant to 28 U.S.C. § 1404(a). Consequently, Plaintiff's first, second, and third objections are rejected.

Plaintiff's fourth objection relates to the Magistrate Judge's finding that factor 1 (Plaintiff's initial choice of forum) was neutral. Plaintiff argues that "given the invalidity of the forum selection clause, the Plaintiff's initial choice of this Court as the forum supports retention of this action."**Plaintiff's Objections, at 3.** Having previously found the forum-selection clause valid, the Court will reject Plaintiff's fourth objection and find that factor 1, "plaintiff's initial choice of forum," is neutral.

***5** Plaintiff next objects to the Magistrate Judge's conclusion finding factor 2 (residence of the parties) neutral because "Plaintiff resides in this district and defendant appears to be a corporate resident of Pennsylvania."**Memorandum and Recommendation, at 11.**Plaintiff argues that because he is a North Carolina resident and "Defendant is also a resident of North Carolina pursuant to 28 U.S.C. § 1391(c) (2005) and N.C.G.S. § 1-75.4 (2005)... this factor favors retention" of this action in the Western District of North Carolina. **Plaintiff's Objections, at 3.** The Court, like the Magistrate Judge, finds this factor neutral.

While it is true that 28 U.S.C. § 1391(c) references a corporation being a "reside[nt] in any judicial district in which it is subject to personal jurisdiction at the time the action is commenced," this section is not controlling here. The Court's concern in determining whether to transfer venue is a practical one, and for practical purposes (rather than technical procedural rule purposes) Defendant is not a "resident" of North Carolina. Furthermore, the Court's duty is to consider both the quantitative *and* qualitative nature of the factors. Therefore, even if the Court were to nominally "award" this factor to Plaintiff, its value to him in terms of quantity would be totally neutralized by its utter lack of value in terms of quality. Therefore, Plaintiff's fifth objection is rejected.

Plaintiff's sixth objection states the Magistrate Judge erred in finding that factor 4, "availability of compulsory process for attendance of witnesses and the costs of obtaining attendance of willing witnesses," supports transferring this matter to Pennsylvania. Plaintiff asserts that "pursuant to Rule 45 of the Federal Rules of Civil Procedure, the Pennsylvania District Court has no subpoena power to compel the attendance at trial of unwilling non-party witnesses located in North Carolina[,]" and "juries are better able to weigh the credibility of witnesses through live testimony as opposed to deposition testimony."**Plaintiff's Objections, at 3 (citation omitted).** The Court finds this objection to be without merit.

First, as to the costs of obtaining the attendance of witnesses, "in every diversity action, one side or the other will inevitably be burdened, and ... such burden was foreseeable when the parties negotiated the contract containing the forum selection clause."**Memorandum and Recommendation,** at 13 (citing *AC Controls Co., Inc. v. Pomeroy Computer Resources, Inc.*, 284 F.Supp .2d 357, 362 (W.D.N.C.2003)). As part of their contract, these parties have a valid forum-selection clause; if Plaintiff is the party to whom the burden of litigating out-of-state is delegated as a result of that provision, "such burden was foreseeable when the parties negotiated the contract containing the forum selection clause."***Id.*** Second, as to subpoena power,

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d Page 6
Not Reported in F.Supp.2d, 2006 WL 1642227 (W.D.N.C.)
**(Cite as: Not Reported in F.Supp.2d, 2006 WL 1642227 (W.D.N.C.))**

Plaintiff has done little more than speculate about the unavailability of witnesses due to the lack of subpoena power. ***See,* n. 3 *supra* .**Such speculation is unavailing. Given the existence of a valid forum-selection clause, and that Plaintiff has offered nothing but speculation in regards to compulsory process for attendance of witnesses, the Court agrees with the Magistrate Judge's conclusion that this factor weighs in favor of transfer. Plaintiff's sixth objection is, therefore, rejected.

***6** Additionally, inasmuch as Plaintiff's seventh objection regarding factor 7 ("relative advantages and obstacles to a fair trial") is based on "the arguments as set forth in Objection 6," Plaintiff's seventh objection is likewise rejected. ***See,* Plaintiff's Objections, at 4.**

Plaintiff's eighth objection relates to factor 8 ("other practical problems that make a trial easy, expeditious, and inexpensive"). The Magistrate Judge concluded that this factor was neutral. ***See,* Memorandum and Recommendation, at 13.**"Plaintiff objects on the basis that the greater weight of the evidence shows that conducting this trial in North Carolina would require less expense for all parties involved and would result in the most expeditious disposition of this matter."**Plaintiff's Objections, at 4.** Plaintiff does not identify the evidence referred to in his objection, nor did he do so in his one-sentence address of this factor in his brief opposing Defendant's motion. ***See, id.;*Plaintiff's Brief, at 16 (wherein Plaintiff makes the conclusory argument that "[c]onducting this trial in a North Carolina forum would require less expense for all involved. Consequently, this factor also weighs in favor of retention.").** Consequently, the Court rejects this objection on the bases of 1) Plaintiff's inadequate and improper objection; 2) these diverse parties have a valid contractual forum-selection clause; and 3) the burden of litigating a matter out-of-state, including the cost burden, "was foreseeable when the parties negotiated the contract containing the forum selection clause."***See, Thomas, supra; Battle, supra.***Plaintiff's eighth objection is rejected.

Plaintiff's ninth objection relates to the tenth factor, that is, the Magistrate Judge's finding "that the interest in having local controversies settled at home, and the appropriateness in having the trial of a diversity case in a forum that is at home with the governing state law, support the transfer of this matter to Pennsylvania."**Plaintiff's Objections, at 4.** In asserting that this factor actually weighs in favor of retention, Plaintiff objects to the Magistrate Judge's determination "on the basis that the applicable law and the greater weight of the evidence show that the contract at issue, including the choice of law provision contained therein, constitutes an unenforceable adhesion contract."***Id.***

Plaintiff has stated two claims against Defendant, one for unfair trade practices and *one for breach of the written contract.*Attached to the complaint as Exhibit A is the contract entered into between the Plaintiff and the Defendant which states that "[p]ursuant to that agreement ... the Plaintiff is entitled to compensation from the Defendant in the amount of a least $250,000."**Complaint, ¶¶ 7, 12.**The first element of a breach of contract claim is "the existence of a valid contract."***See, Woolard v. Davenport,* 166 N.C.App. 129, 134, 601 S.E.2d 319, 322 (2004) (noting that the first element of a breach of contract claim in North Carolina is "the existence of a valid contract" (emphasis added) (citation and internal quotations omitted)); *Sullivan v. Chartwell Inv. Partners, LP,* 873 A.2d 710, 716 (Pa.Super.Ct.2005) (noting that the first element of a breach of contract claim in Pennsylvania is "the existence of a contract" (emphasis added)).** It is, therefore, entirely unclear to this Court how Plaintiff intends to obtain *both* an "entry of a judgment in the amount of $250,000 for breach of contract" and, *simultaneously*, establish that the contract is invalid as "constitut[ing] an unenforceable adhesion contract."**Complaint, prayer for relief, ¶ 1; Plaintiff's Objections, at 4.** Rather than assume the Plaintiff intended to defeat part of his complaint through his objections to the Memor-

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d Page 7
Not Reported in F.Supp.2d, 2006 WL 1642227 (W.D.N.C.)
**(Cite as: Not Reported in F.Supp.2d, 2006 WL 1642227 (W.D.N.C.))**

andum and Recommendation, the Court will simply reject Plaintiff's ninth objection. ***See, Woolard, supra; Sullivan, supra.***

***7** Additionally, in as much as Plaintiff's tenth objection is based on "the arguments as set forth in Objection 9[,]" Plaintiff's tenth objection is likewise rejected.

Plaintiff's final two objections relate to "the Magistrate Judge's conclusion of law ... that the eleven-factor test for deciding whether to transfer an action ... weighs in favor of transfer, both quantitatively and qualitatively" and "the Magistrate Judge's recommendation ... that this matter be transferred to the United States District Court for the Middle District of Pennsylvania for disposition."**Plaintiff's Objections, at 5.** Having addressed and rejected each of Plaintiff's objections regarding particular factors of the 11-factor test, the Court arrives at the same ultimate conclusion as did the Magistrate Judge: "Both quantitatively [FN4] and qualitatively, the factors weigh in favor of transfer to the Middle District of Pennsylvania."**Memorandum and Recommendation, at 14 (footnote added).** Consequently, considering the results of such inquiry as well as the presence of the contractual forum-selection clause designating the Middle District of Pennsylvania as the appropriate forum, the Court finds that transfer of this matter to said forum is appropriate.

FN4. One factor weighs in favor of retention (factor # 3), two factors weigh in favor of transfer (factors # 4 and 10), and eight factors are neutral (factors # 1, 2, 5-9, and 11).

**B. Motion to Dismiss for Improper Venue**

Defendant has filed an objection to the Magistrate Judge's recommendation that its motion to dismiss for improper venue be denied. Having determined that transfer is appropriate under 28 U.S .C. § 1404(a), revisiting the Magistrate Judge's determination of Defendant's motion under Rule 12(b)(3) would be essentially an academic exercise. If Plaintiff chooses not to prosecute his case in Pennsylvania, Defendant has effectively obtained its dismissal; if Plaintiff does choose to continue the case in Pennsylvania, dismissal here would serve no real purpose other than to add the additional expense of re-filing the case in Pennsylvania. In addition, this area of the law is extremely unsettled. Various federal courts cannot agree on the proper avenue for considering a dismissal based on a forum-selection clause, let alone whether dismissal is proper. ***See, Salovaara v. Jackson Nat'l Life Ins. Co.,* 246 F.3d 289, 298 n. 6 (3d Cir.2001) (noting that "[t]here is much disagreement over whether dismissal (where appropriate) should be made pursuant to Fed.R.Civ.P. 12(b)(1), 12(b)(3), or 12(b)(6)," and collecting cases); *Kerobo v. Southwestern Clean Fuels, Corp.,* 285 F.3d 531, 534-36 (6th Cir.2002) (finding error in district court's dismissal for improper venue when the lower court's decision was based on the presence of a forum-selection clause); *Int'l Software Sys., Inc. v. Amplicon, Inc.,* 77 F.3d 112, 113 (5th Cir.1996) (affirming dismissal by district court for improper venue when decision was based on the presence of a valid forum-selection clause).** Therefore, with no real purpose served in this case by ordering a dismissal without prejudice to refiling in the Middle District of Pennsylvania, the Court declines to "throw its hat in the ring" and will simply deny Defendant's motion to dismiss. ***See, e.g., Salovaara,* 246 F.3d at 299 (remarking that although "a district court retains the judicial power to dismiss notwithstanding its consideration of § 1404, "[w]e acknowledge that, as a general matter, it makes better sense when venue is proper but the parties have agreed upon a not-unreasonable forum selection clause that points to another federal venue, to transfer rather than dismiss.").**

**IV. ORDER**

***8 IT IS, THEREFORE, ORDERED** that Defendant's motion to dismiss for improper venue is

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d Page 8
Not Reported in F.Supp.2d, 2006 WL 1642227 (W.D.N.C.)
**(Cite as: Not Reported in F.Supp.2d, 2006 WL 1642227 (W.D.N.C.))**

**DENIED.**

**IT IS FURTHER ORDERED** that Defendant's alternative motion to transfer venue is **GRANTED,** and this matter is hereby transferred to the United States District Court for the Middle District of Pennsylvania, pursuant to 28 U.S.C. § 1404(a).

W.D.N.C.,2006.
Simpson v. Snyder's of Hanover, Inc.
Not Reported in F.Supp.2d, 2006 WL 1642227 (W.D.N.C.)

END OF DOCUMENT

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.